## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CATHERINE BROWN** | **CIVIL No.** | **21-1844** |
| **versus** | **JUDGE:** | **JTM** |
| **MINYANGO TOKPAH,  SHAKIM HARRIS, TANISHA WRIGHT, ANDREA MICHELLE STEWART,  JONTE MILLER, and THERESA D. BRUNSON** | **MAGIS:** | **JVM** |

## <u>POST-HEARING MEMORANDUM IN SUPPORT OF PLAINTIFF CATHERINE BROWN's MOTION FOR ORDER OF A PRELIMINARY INJUNCTION</u>

NOW COMES plaintiff/petitioner CATHERINE BROWN, through undersigned counsel, and respectfully files here her Post-Hearing Memorandum in Support of her Motion for Order of Preliminary Injunction filed with Court permission in furtherance of her December 14, 2021 Oral Argument of her Rule to Show Cause why the requested relief should not be ordered.

Plaintiff files here her Post-Hearing Memorandum providing sound grounding in fact and in law for this Court to GRANT plaintiff/petitioner CATHERINE BROWN's Motion for Order of Preliminary Injunction prayed for here, as follows:

## <u>Authority of this Court to Grant the Prayed-For Injunction</u>

This matter involves Plaintiff's civil claims for damages involving her seeking recompense for the defendants' threats of violence, intimidation, cyber stalking and related harassment and defamation (to be determined at a trial on the merits), all

adequately set forth in your Plaintiff's Complaints, memoranda in support of injunctive relief, her Hearing testimony, and her Affidavit of September 27, 2021 (Post-Hearing Memo. Exhibit One - originally drafted for support of these matters, but by oversight apparently not included in this record to date).  Plaintiff asserts that she provides sufficient authority, facts and reasoning to have this Court grant to her the injunctive relief sought in the interim prior to decision on the merits, seeking a Court Order to have the defendants – at the very least those served with her lawsuit and motions – cease their continuing and intense pattern of online threats and intimidation, as well as specific threats of violence against her.

This matter is before this Federal Court because the Plaintiff's claims are made here under Louisiana State tort law, but are subjected to Diversity Jurisdiction given all defendants are domiciled outside of Louisiana and the Plaintiff is domiciled in Louisiana, and previously Delaware, thus creating complete Diversity amongst the parties.  As much of the acts and torts committed by the defendants, and damages unto the Plaintiff, were witnessed by and damaged the Plaintiff while she was in Louisiana, and more particularly located in the Eastern District of Louisiana, and as the b the quantum value of these claims in good faith are exceeding $75,000.00, both venue and jurisdiction are appropriate in this Court.

As discussed in the December 14, 2021 Hearing between Counsel and the Court, there exists precious little authority in a civil context regarding the issue of whether or not a Preliminary Injunction should appropriately be issued as prayed for by Plaintiff here. As there is no current federal civil statute or law in effect prohibiting or making actionable violence or stalking against persons such as the

plaintiff here, and as this matter is before this Court on the basis of Louisiana State law tort claims brought here via Diversity Jurisdiction, this Court should apply the Louisiana law and jurisprudence - however rare – to this fact situation and the Plaintiff's prayer for immediate relief from the defendants' horrible, upsetting and tortuous actions as alleged here.

**Reported Case Law, Statutes and Authority supporting Granting Injunction:**

After much research and study, Plaintiff and counsel have found a handful of Louisiana appellate court decisions as well as one Federal Fifth Circuit decision that will assist this Court in finding the proper grounding to grant the relief sought by Plaintiff here. As a general rule, the trial court is vested with much discretion in determining whether to grant or refuse a preliminary injunction, but this discretion is not without limits. If the discretion was erroneously exercised, the trial judge's determination will be subject to review on appeal. *Smith v. West Virginia Oil & Gas Co.,* 373 So.2d 488 (La.1979); *Posey v. Smith,* 453 So.2d 1016 (La.App. 3 Cir.1984).

La.C.C.P. Article 3601 provides in pertinent part that "An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law …".  In *Huber Oil Co. of Louisiana v. Save-Time,* 422 So.2d 597 (La.App. 3 Cir.1982), the Louisiana Third Circuit Court of Appeals summarized under what circumstances the jurisprudence has upheld the issuance of a preliminary injunction, providing that in order to avail oneself of the remedy provided by La.C.C.P. Article 3601, one must be without an adequate remedy at law. The plaintiff must show that irreparable injury, loss or

damage will ensue if an injunction is not granted. Therefore, the party seeking an injunction under LSAC. C.P. article 3601 must show that the loss alleged cannot be adequately compensated in money, or that it is a loss for which damages are not susceptible of being measured by pecuniary standards. *LeBlanc v. Lyons*, 401 So.2d 626 (La.App. 3rd Cir.1981).The jurisprudence has recognized that the sole purpose of a preliminary injunction is to preserve the status quo pending a full trial on the merits. A preliminary injunction may be granted only upon a prima facie showing that the plaintiff is entitled to such judgment, i.e., that irreparable injury will result at the hands of the defendants if the plaintiff's prayer is denied. See *Southwest Sale & Manufacturing Company, Inc. v. Delta Express, Inc*., 342 So.2d 281 (La.App. 3rd Cir.1977), writ refused 345 So.2d 48 (La. 1977). *Huber Oil Co. of Louisiana v. Save-Time*, 422 So.2d 597, at pages 599, 600 (La.App. 3 Cir.1982).

Here, Plaintiff CATHERINE BROWN, in her complaint, amended complaint, her December 14, 2021 Hearing Testimony, and in the more detailed attestations in her attached sworn Affidavit (Post-Hearing Memo. Exhibit 1), have set fourth in detail the hellish harassment and threats to her safety and life made by the defendants, both served and not-yet-served with the pleadings in these proceed-ings, and fully explains that she has had her life and peace so profoundly upset by the defendants' tortuous actions that she has had to relocate her home residence as well as undergo ongoing medical treatment and mental health counseling related to these defendants' actions sought estopped by injunction, and eventual trial judgment, here

In the reported Louisiana Third Circuit case of  *Lassalle v. Daniels*, 673 So.2d

4

704 ( La. 3d Cir., 1996), a civil litigation defendant was made by an injunction to be ordered to cease and desist the harassment, stalking and verbal threats of violence against a State Court Judge. Based upon an accumulation of events, the plaintiff in that matter, Judge Lassalle, filed an action for an injunction, which was granted by the Trial Court. According to plaintiff Lassalle, she filed the petition because it was becoming increasingly apparent to her that Daniels "intends me serious bodily harm."  Plaintiff Lassalle there testified that over a long period, whom she knew socially, began making harassing phone calls to her home. When she got an unlisted telephone number, the defendant began passing in front of her home and leaving notes in her mailbox and on her door. She testified that there was an incident in the parking garage of the governmental building, during which she was verbally accosted and threatened by the defendant, which left her very disturbed and frightened of him.

The trial court in *Lassalle v. Daniels* found that the prerequisites for an injunction had been shown to exist, issuing a temporary restraining order enjoining, restraining and prohibiting the defendant from harassing Judge Lassalle in any manner, from going near her residence, and from interfering with her employment. In further recognizing that the defendant had a right of free speech, the trial court ruled that the defendant's accusations in a public sign display that the plaintiff was a cocaine abuser, cocaine whore, and those types of statements are beyond the scope of the type of First Amendment protected speech that the plaintiff Judge Lassalle should be made to endure, and he is prohibited the defendant by Court-ordered injunction from using those type comments or those type of words.

The judgment rendered prohibited the defendant from harassing the plaintiff in any manner whatsoever; going near her residence; interfering in any manner with her employment; harassing her staff; and going to specific areas of her public building workplace.  The defendant appealed the trial court judgment to the Louisiana Third Circuit, which reviewed the matter and ruled for the plaintiff Judge Lassalle, offering the following standards and analysis in reaching their decision to uphold the injunction:

A showing that irreparable injury, loss or damage may otherwise result to the applicant must be shown before an injunction may be issued. La.C.C.P. art. 3601. The question of whether the preliminary injunction should be granted or denied is addressed to the sound discretion of the trial court (trier of fact) and the trial court's decision will be disturbed on review only in cases where a clear abuse of its discretion has been shown. *Anzelmo v. Louisiana Commission on Ethics for Public Employees,* 435 So.2d 1082, 1087 (La.App. 1st Cir.), *writ denied,* 441 So.2d 1220 (La.1983).

### First Amendment Considerations:

The *Lassalle* Court held that while, the First Amendment provides that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. *DeSalvo v. State of Louisiana,* 624 So.2d 897, 899 (La.1993); *cert. denied,* ___ U.S. ___, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994), that nevertheless, the rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place or at any time, citing *State v.*

*Encalade,* 505 So.2d 87 (La.App. 4th Cir.); *writ denied,* 508 So.2d 63 (1987), *citing, Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).  As speech strays further from the values of persuasion, dialogue and free exchange of ideas the first amendment was designed to protect, and *moves toward threats made with specific intent to perform illegal acts,* the state has greater latitude to effectively neutralize verbal expression. *Shackelford v. Shirley,* 948 F.2d 935, 938 (5th Cir.1991), (emphasis added). Furthermore, as explained by noted Constitutional Scholar, Professor Tribe:

> The notion that some expression may be regulated consistent with the
> first amendment... starts with the already familiar proposition that
> expression has special value only in the context of dialogue:
> communication in which the participants seek to persuade, or are
> persuaded; communication which is about changing or maintaining
> beliefs, or taking or refusing to take action on the basis of one's
> beliefs ... It is not plausible to uphold the right to use words as
> projectiles where no exchange of views is involved. L. Tribe, *American
> Constitutional Law,* § 12-8 at 836-37 (2d Ed.1988) (emphasis added).

In *Shackelford v. Shirley,* supra, 948 F.2d 935, the U.S. Fifth Circuit was faced with defendant's argument that his conviction for violating Mississippi's telephone harassment statute constituted an impermissible curtailment of his First Amendment rights. In that matter, the defendant admitted he called his former supervisor and told him the next time he came by the defendant's car lot he would

be "toting an ass whipping." The court rejected the defendant's claim, holding: "In our view, as expansive as the first amendment's conception of social and political discourse may be, <u>threats made with specific intent to injure and focused on a particular individual easily fall into that category of speech deserving of no first amendment protection.</u>" *Shackelford,* supra, 948 F.2d at 938, (emphasis added).

The  *Lassalle v. Daniels* panel agreed with the U.S. Fifth Circuit 's conclusion in *Shackelford* and found it applicable to the matter before them, holding that the defendant's actions, intimidation and publicly disseminated vile statements against the plaintiff Judge Lassalle were NOT protected by the First Amendment, despite thee rights of freedom of expression, which are set forth in that jurisprudence supporting same. See, e.g., *Greenberg v. De Salvo,* 254 La. 1019, 229 So.2d 83 (1969), *cert. denied, sub nom. Greenberg v. Dunker,* 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); *Hairford v. Perkins,* 520 So.2d 1053 (La.App. 3rd Cir. 1987); *Galle v. Coile,* 556 So.2d 957 (La.App. 3rd Cir.1990), finding that, as did the defendant's threat in *Shackelford,* the speech by the defendant there was well beyond "mere" expression of his opinion of plaintiff Judge Lassalle went far beyond the realm of protected speech, as that defendant's . "speech" included words of anger and profanity and included threats of varying degrees, i.e., she "is going to get it yet"; she "will be sorry"; that he would "be back tomorrow" and assertions to the effect that a restraining order was not going to stop him and that he was not afraid of the law or of going to jail. The plaintiff Judge Lassalle testified that she was extremely disturbed by and frightened of the defendant, and that his persistent actions despite her repeated requests that he

leave her alone left her in fear that he would inflict great bodily harm to her. Further, the record contains testimony of several witnesses who witnessed that defendant's behavior, and were frightened of him and considered him to be potentially violent. Given those actions, and the circumstances surrounding them, the *Lassalle v. Daniels* panel found that the defendant's speech was delivered with the specific intent to injure and was focused and directed on one particular individual; a type of speech which is not constitutionally protected.

**Preliminary Injunction Granted as Appropriate:**

The *Lassalle* Court also held that while courts are generally reluctant to issue an injunction to restrain torts such as defamation or harassment. *Greenberg v. De Salvo,* supra, 229 So.2d at 86. An injunction is a harsh, drastic and extra-ordinary remedy and is only issued where the petitioner is threatened with irreparable loss or injury without adequate remedy at law. Irreparable injury is that which can not be adequately compensated in damages, or for which damages can not be compensable in money. *Greenberg v. De Salvo,* supra, 229 So.2d at 86.

The *Lassalle v. Daniels* panel found the defendant's speech to be far more serious than the expression of allegedly defamatory and insulting speech. As detailed above, there were some very real and imminent threats made toward the person of plaintiff Lassalle, allowing for a finding that petitioner's fear of bodily harm and continued threats are justified based on the evidence in the record, and constitute a showing of irreparable injury, and that appellate court found that the trial court did not abuse its discretion in granting the preliminary injunction.

**Irreparable Harm to Plaintiff if this Prayed-for Injunction is Not Granted**

In order to obtain a preliminary injunction a plaintiff must show that he will suffer irreparable harm if the injunction is not granted, that he is entitled to the relief sought, and he must make a prima facie showing that he will prevail on the merits. *LaFreniere Park Foundation, supra*. In contrast, the issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence. *Mary Moe, L.L.C. v. Louisiana Bd. of Ethics,* 03-2220 (La.4/14/04), 875 So.2d 22. Thus, because an applicant for a preliminary injunction need make only a prima facie showing, less proof is required that in an ordinary proceeding for a permanent injunction. *Gaumnitz v. Williamson*, 36,177 (La.App.2d Cir.8/14/02), 824 So.2d 531; *Monroe Real Estate & Dev't Co. v. Sunshine Equipment Co.,* 35,555 (La.App.2d Cir.1/23/02), 805 So.2d 1200; *Hailey v. Panno*, 472 So.2d 97 (La.App. 5th Cir.1985).

For purposes of determining whether preliminary injunction is warranted, "irreparable injury" means that the moving party cannot be adequately compensated in money damages for his injury or suffers injuries which cannot be measured by pecuniary standards. *LaFreniere Park Foundation, supra*. Where one relies on secondary meaning to establish the distinctiveness of the name, in order to enjoin another's use of a similar name, proof of a likelihood of consumer confusion is required. *Gulf Coast Bank, supra.*

Here, Plaintiff CATHERINE BROWN asserts that the threats and upset caused to her are extremely damaging, hurtful and are upsetting here health and

peace – which is causing her on a daily basis upset and medical injury that is

irreparable.  These are not simply damages that should wait for a trial judgment

on the merits and recompense at a later date, these threats and upset should be

stopped immediately, and doing so will not restrict anything involving the rights of

any defendant or related actor here.   The defendant/actors' tortuous actions are

immediately damaging here, and the remedy of an injunction prohibiting continued

harassment and attacks upon your Plaintiff, whether online or in-person

intimidation, can and should be stopped by this Court.  An injunction against even

only those properly served defendants here will send a clear message to the

affiliated un-served defendants and actors to stop this ongoing behavior that is

severely damaging to your Plaintiff here. The defendants and affiliates have posted

videos threatening your Plaintiff, have posted videos physically stalking the homes

of others targeted, and these same actors should be held to their advertized

statements promising to injure or hurt the Plaintiff by similarly physically going to

her home to do so.  Plaintiff testified in open Court that she witnessed what she

believed was a defendant physically appearing near her home and stalking her –

consistent with video posts where these same actors similarly stalked others, and

where they promised to stalk and injure her.

Further, the Plaintiff here asserts tortuous conduct by these defendants and

affiliated actors (to be named defendants after proper identification), and these torts

are indeed actionable, and that she will almost certainly prevail on the merits of her

tort claims here, and further attests and has testified in open Court, provided

Affidavit testimony, and copies of video internet postings showing that her life and

safety have been threatened by these defendants intentionally and explicitly threatening her safety. She has endured explicit and implied threats of real potential violence.

The "status quo" in this instant case, and referred to in the case law involving injunctive litigation, here would be THIS Plaintiff living without the constant harassment, threats of violence and upset including actionable (via injunction) threats of violence and injury to her, as document in her complaints, testimony and Affidavit.  Just because SOME of the Plaintiff's claims involve defamation and horrible language – admittedly not subject to injunctive relief – does not mean that ALL of the defendant actors' attacks and threats are not subject to this Court's injunctive relief. This Court has the absolute authority to order these defendants – arguably all of those affiliated with the served defendants, and at a minimum, all of the actually served defendants – to cease their tortuous and actionable threats of violence and intimidation of the Plaintiff as prayed for here.

Here, the Plaintiff CATHERINE BROWN, in her Complaints, her sworn Affidavit, her submissions of those screen shots and video clips – perhaps one percent of those internet postings actually attacking and threatening her in this past year - and has demonstrated circumstances similar and analogous to the situation allowing the granting of such an injunction in the *Lassalle v. Daniels* litigation.

It is important to note that the *Lassalle v. Daniels* decision, and the case law supporting the granting of the injunction against the defendant there, occurred in the early-mid 1990s prior to the availability of the internet. At that time, there were no YouTube channels or videos, no E-mail or Chat Rooms, and no immediate

cyber ability to threaten persons in the manner that your Plaintiff here has been and continues to be made to endure. Where Judge Lassalle was subjected to publicly displayed signs attacking her, and angry venting in person by the defendant there, in the instant matter CATHERINE BROWN was subjected to almost daily internet stalking, threats of violence both implicit and implied, video film showing those threatening her actually filming themselves threatening her as well as physically stalking others, and with CATHERINE BROWN  subjected to attacks and threats at least tenfold in frequency and number in one year, with those explicit and implied threats endured by plaintiff at minimum analogous and similar in manner and real threat of potential violence endured by Judge Lassalle there.   Violent threats, threats to one's life, online impersonation, intimidation of a victim, criminal defamation are criminal activities perpetrated against a targeted individual, Plaintiff CATHERINE BROWN. These actions are not protected by the First Amendment.

Plaintiff readily admits that the torts of defamation and harsh words are not proper normal grounds for the granting of any injunction – even if Plaintiff were certain to prevail against these defendants at trial for those claims. But just because SOME of the Plaintiff's claims made in this litigation involve defamation and horrible language – admittedly not subject to injunctive relief – does not mean that ALL of the defendant actors' attacks and threats of violence upon your Plaintiff are not subject to this Court's injunctive relief.  These threats have caused serious upset and ongoing damage to your Plaintiff's health, requiring medical treatment and counseling over this past year – ongoing irreparable injury and months lost to bad health caused by these defendants' actions, as well as prompting her to move her

residence due to specific threats of physical violence, as well as inciting others to do the same, by certain defendants against her.

Given the facts, evidence, reasoning and case authority in place in Louisiana, there exists proper legal grounding and authority to have this Court issue an injunction in CATHERINE BROWN's favor based upon the similar grounding used to support and uphold the injunction upheld in the *Lassalle v. Daniels* decision there.

## Highlighted Facts supporting the Granting of an Injunction here:

Criminal statute and law violations by these defendants and affiliated actors threats have caused serious upset and ongoing damage to your Plaintiff's health, requiring medical treatment and counseling over this past year, as well as prompting her to move her residence due to specific threats of physical violence. The defendants and affiliated actors have blatantly violated Louisiana Rev. Statute § 14:73.10, regarding these defendants' the intent to harm, intimidate, threaten, or defraud, to intentionally impersonate the Plaintiff without her consent.

Online impersonation of another person without their permission is not protected by the First Amendment. It is a criminal act per Louisiana Criminal Law and the relevant abovementioned statute.   Here, the defendants advanced their harassment, defamatory speech, violent threats and inciting of violence, by the defendant, Spotem Shotem creating a YouTube account bearing her name, and repeatedly making sexually explicit comments regarding a female content creator.

Defendant Spotem Shotem illegally impersonates Catherine Brown online repeatedly, ginning up hatred and upset against her by like-minded YouTube viewers, potentially to be acted out by those weakest amongst up, as does defendant Andrea Stewart  who also incites violence against Plaintiff online. All of these items are detailed in her attached Affidavit, as well as her previous Complaints, Memoranda and Hearing testimony.

Further, the defendants in their online threats and intimidation of Plaintiff violate U.S. Code 18 Section 1512, where it is illegal to interfere with witness testimony or cooperation in a criminal case. The witness intimidation, does not actually have to be completed to be in violation of the law, and Witness intimidation is a form of obstruction of justice.

Per La. R.S. 14: 40.3, Louisiana Cyberstalking laws, a person can be charged for cyberstalking for using electronic mails or electronic communication of any language to swindle money or valuable items from a person or threats to cause bodily harm to any person be it sibling, spouse, child, or even threats to damage the property of the person. The electronic communication or electronic messages repeatedly to harass or terrify the person no matter if a conversation takes place or not.  Again, the details of certain defendants violating this statute is fully explained in Plaintiff's complaints, memoranda and Affidavit.

Plaintiff Catherine Brown contacted YouTube Administration concerning the damaging postings made by defendant  TCTV.  YouTube reviewed the and held that it was against YouTube's community guidelines (harassment and cyber bullying). After their investigation, per email from YouTube to Catherine Brown,

YouTube deleted all of TCTV's channels as well as Donald Murray's channel. Plaintiff believed after YouTube's removal of some of the defendants' damaging content and channels, that the attacks would end. Instead, once the certain damaging YouTube channels were deleted, rather than desisting their criminal activities against Catherine Brown, the defendant content creators and their chatroom affiliate trolls escalated their harassment of Catherine Brown, TCTV recruited other content creators to join him and the internet group he founded, "The Good Guys" in their harassing, sexually assaulting and threatening violence against Catherine Brown on YouTube.

**Plaintiff Catherine Brown's contact with Law Enforcement seeking intervention against the Defendant Actors:**

Catherine Brown has in the past contacted Law Enforcement seeking assistance here. As recently as the week of January 10, 2022, Plaintiff has filed reports with the Lafayette (City) Police Department seeking relief from continued threats and potential threats to her health and safety.  She awaits that agency completing a police report, but as recently as this week was told by law enforcement that she should seek relief from the Courts via a civil remedy, as the criminal statutes and relief via law enforcement focus upon restraining persons in domestic relationships, and not in the fact situations present here.

Previously, Plaintiff reported TCTV's and Donald Murray's harassment, sexualized bullying, extortion and blackmail to the law enforcement authorities in Delaware, her former residence to no avail, as there was no real progress or positive outcome.  Upon inquiries from Delaware authorities, rather than desisting

with the police now being involved, the defendant content creators, TCTV, Tanisha Price (Wright) aka Black Lounge Entertainment aka TPRI, Poetik Flakko aka Frederick Jallah aka Miyango Topkah, SlanderGod aka Positively Hate, Spotem Shotem and their affiliated online trolls began to escalate and intensify their threats and harassment against Plaintiff Catherine Brown, with some actors stating bthey were retaliating against her even more so for going to police.

Defendant TCTV began a campaign of recruiting other online content creators to "cancel" Catherine Brown for going to police. Defendant Black Lounge Entertainment, aka "TPRI", aka "Tanisha Price (Wright)" began to go from content creator to content creator stating and fabricated lies to incite violence, threats and harassment against Catherine Brown in retaliation. Defendant Andrea Stewart sent an emailed statement to police consisting of the same false statements (defamatory statements) she and the other conspiring content creators were publishing against Catherine Brown.  Andrea Stewart therefore made false statements to police to obstruct justice. She then bragged about her interaction (email) to police in a live stream conducted by another content creator.   At the same time the above events involving the content creators were taking place, Theresa Brunson (attorney), representative of TCTV, sent a "Cease and Desist" letter to Catherine Brown (previously submitted into evidence here). This letter from defendant Brunson, intended to intimidate Catherine Brown from further interaction with police and YouTube Administration, falsely accused Catherine Brown of being in violation of state laws for her complaints filed.

**Status of Service of Process Upon Named Defendants as of January 14, 2022:**

The status of service of process upon each respective defendant are as follows:

- MINYANGO TOKPAH - US Post Office returned the attempted Service of Process as allegedly being the wrong address;

- SHAKIM HARRIS - US Post Office returned the attempted Service of Process as allegedly being the wrong address;

- TANISHA PRICE, also known as TANISHA WRIGHT or TANISHA WRIGHT PRICE – US Post Office has identified her as being served on November 18, 2021 via Certified US Mail (See Return filed into the Court record).  On or about November 20, 2021, a person identifying herself by this name called on telephone undersigned Plaintiff's counsel, claiming that she was not the correct person named in this lawsuit, that the above names were not hers, further informing counsel that the Plaintiff was "crazy". Some days later undersigned counsel was contacted by a local Louisiana attorney who discussed the litigation with Plaintiff's counsel, and informed undersigned that he may or may not enroll on behalf of this defendant. Undersigned has had no contact with that potential defense counsel since late November, 2021.   This defendant, as recently as January 14, 2022, has broadcast in her pseudonym as "TPRI" on her YouTube Channel "Black Lounge Entertainment" claiming that is lawsuit is somehow not real nor affecting her, and that this Court in this matter has committed irregularities in allowing undersigned counsel to represent the Plaintiff here, falsely claiming undersigned is "not a real lawyer (which is absolutely untrue and be

confirmed by contacting the LSBA as well as the USDC Clerk). To date, despite having been served with this lawsuit and the December 14, 2021 hearing notice, undersigned counsel is unaware of any pleadings, extensions or other contact that this defendant has made with the Court.

- ANDREA MICHELLE STEWART - US Post Office has identified this defendant as being served on November 17, 2021 via Certified US Mail (See Return filed into the Court record). To date, despite having been served with this lawsuit and the December 14, 2021 hearing notice, undersigned counsel is unaware of any pleadings, extensions or other contact that this defendant has made with the Court.

- JONTE MILLER - US Post Office has identified this defendant as being served on November 15, 2021 via Certified US Mail (See Return filed into the Court record). Despite the Return Receipt, signed on the above date presumably by this defendant, as well as Post Office records (attached to the Return on Service Of Process filed herein), the actual unopened pleadings were returned to undersigned counsel's law office by US Mail. To date, despite having been served with this lawsuit and the December 14, 2021 hearing notice, undersigned counsel is unaware of any pleadings, extensions or other contact that this defendant has made with the Court.

- THERESA D. BRUNSON - US Post Office has identified this defendant as being served on November 15, 2021 via Certified US Mail (See Return filed into the Court record). This defendant has in fact contacted the Court and is believed to have filed pro se' responsive pleadings.

**Service of Process Issues**:

Plaintiff asserts that there are two internet associations (collaborated content creators and their chat trolls who push their narratives) involved as defendants. Those two groups are "The Good Guys" (all Good Guys being sued are mentioned below) and the "Anti Fraud Warriors, LLC".   Defendant Andrea Stewart (who has been served here) is a leading figure within the Anti Fraud Warrior Group. They as a group are deemed here to have been served have been served and noticed of these proceedings via service of process being executed upon this defendant.

The "Good Guys" have made videos of themselves defining bylaws, establishing rules (one of which to "cancel" Catherine Brown to punish her for seeking police protection). The "Good Guys" "install" members per YouTube videos. Per posted  YouTube videos, the "Good Guys" meet and vote to accept or to eliminate members of the group, and based on those facts, "The Good Guys" are  a bonifide association of individuals.

Defendant affiliate actor TCTV is a founder of the Good Guys. Per video evidence, The Good Guys are closely associated with defendant Jonte Miller (who has been served), and TCTV's (and Good Guys founder) agent for service, Theresa Brunson, Esq. has also been served.

Per per Louisiana Code Civ. Proc. art. 1264, Service on an unincorporated association is made by personal service on the agent appointed, if any, or in his absence, upon a managing official, at any place where the business of the association is regularly conducted. In the absence of all officials from the place where the business of the association is regularly conducted, service of citation or other process may be made by personal service

upon any member of the association.  Here, TCTV, along with TCTV's entire group, "The Good Guys" and its affiliates/members (both of whom are being sued as a business and individually), consisting of the defendants Poetik Flakko (Frederick Jallah aka Miyango Topkah), Slandergod aka "Positively Hate", General D, The Oracle, Scarlit and Spotem Shotem have been served via the principals being properly served and noticed of this litigation – as described above.

That these defendants choose to ignore these proceedings does not affect the fact that according to Federal Rules of Civil Procedure, they have been properly and officially served.

 YouTube (Google) has sent an email stating that they will provide information concerning anonymous defendants per court subpoena or any other court directive.  At such time, if necessary, Plaintiff Catherine Brown will afford a private investigator to identify, name and serve all additional defendants here, and Plaintiff intends to amend her complaint, as well as execute service of process upon all laggard defendants after seeking Leave to Enlarge the Time allowed to complete these tasks.  But again, t is important that this Court note and understand that all of the defendants are affiliated and work together through association, and have worked to injure Plaintiff Catherine Brown.

**CONCLUSION:**

To no result to date, Catherine Brown has exhausted all resources to get these adult defendants to simply desist their threats, harassment, and defamatory statements to incite violence against her, their attempts to destroy the credibility of

her businesses, demeaning sexualization and sexual humiliation and even online

impersonation.  After Plaintiff's complaints to YouTube and having channels

deleted, they persisted. After her going to Delaware law enforcement agencies

(who conducted an investigation), they persisted, and escalated. Upon filing of this

lawsuit, they continued their attacks, threats and now ridicule her effort for relief

here.

     Defendant Andrea Stewart has made it clear (in online videos) that a Court

must tell her to cease her damaging actions, and none have done so to date.  The

actions of these defendants are not expressions of "free speech". These actions

are criminal actions perpetrated against a targeted individual, Catherine Brown, and

they damage her in a profound and serious way.   The defendants and affiliated

actors continue to threaten the health, life and safety of the Plaintiff at times,

threatening bodily injury, incite violence and threats against Catherine Brown before

their hundreds and thousands of viewers, and reasonable may be presumed to be

inciting weak minded or in-citable persons to act out against her in this heightened

period racial-obsessive internet banter and division.

    If Plaintiff is not able to achieve here this prayed-for preliminary injunction, the

defendants' attacks will continue and they will only be encouraged to escalate the

attacks to become physical - based on their past pattern of behavior. They are even

recruiting other content creators to join them. These defendants actually use these

actions as "content" for their YouTube channels, and openly boast that nothing can

and will be done to them for doing so.

Per Louisiana C.C.P. 3601, "An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law…." The previous is definitely the Plaintiff's case. She will suffer numerous irreparable harms absent an injunction. These defendants are very hostile persons that actually show up at their targets' homes, call their targets' jobs to verify if they are working at the facility to stalk the targets at work, and have boasted of this in filmed YouTube postings actually showing them at their target's homes, and with firearms threatening to use them against their targets. These attacks will reasonably be expected to escalate as more defendants are personally served and are actually summoned and compelled by law to respond to this lawsuit.

Plaintiff sincerely feels that the defendants' attacks against her will advance in attack against her without this injunction. The Plaintiff sincerely feels that she can not simply ignore these aggressively threatening defendants, and simply hope for the best by ignoring them.   The fact is that the Plaintiff has attempted to ignore them, and the result was negative – certain defendants instead created accounts using Plaintiff's name to harass, sexually bully others so that her name is "kept alive" to be harassed.

## CONCLUSION

Petitioner CATHERINE BROWN, as soon as practicable, respectfully requests that this Court issue orders imposing upon all concerned a Preliminary Injunction estopping and prohibiting the named defendants, as well as unnamed actors, as well as all associates and affiliates of the named defendants, from their

continuing pattern of intentional continual and ongoing pattern of cyber stalking, harassment, defamation, extortion, threats to her life and safety, and other cyber and online harassment of this Plaintiff, which are in violation of several Federal and State of Louisiana criminal laws, as well as civil law claims brought here subject to complete Diversity Jurisdiction here.

Further, Petitioner also requests that this Court issue an order after a hearing and granting of a Preliminary Injunction, ordering that the online entities Google and it's YouTube branch be directed by this Court order to discontinue allowing any defendant or aligned entity from posting any additional online threats, defamation and harassment of your Petitioner by each defendant and all affiliated persons or entities, that all existing online threats, defamation and harassment of your Petitioner by each defendant and all affiliated persons or entities be removed from view,

Respectfully Submitted,

*Dominic N. Varrecchio*

Dominic N. Varrecchio (La. Bar #19456)
1539  Jackson Avenue, Suite 100
New Orleans,  LA  70130
Telephone:  (504) 524-8600
Email: knic55@cox.net
*Attorney for Petitioner*

24

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing, together with all related pleadings involved in this filing, have been served upon all parties and/or their counsel by the CM-ECF electronic filing system for the United States District Court, as well via actual service of process of the related Petition/Complaint, Request For Preliminary Injunction and Notice of Hearing of Temporary Restraining Order upon those defendants of those items together with Summons to Appear.

Petitioner's Counsel further has also served all related filings here via E-mail to all defendants where E-mail addresses are available to Petitioner and Counsel, as certified and explained in the attached Rule 65 Certification. This 14th day of January, 2022.

*Dominic N. Varrecchio*
_____
DOMIINIC N. VARRECCHIO