UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CATHERINE BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1844** |
| **MINYANGO TOKPAH ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss (Doc. 51) filed by Defendants Andrea Stewart, Gerald Palmer, and Anti Fraud Warriors, LLC. For the following reasons, this Motion is **GRANTED**.

## BACKGROUND

Plaintiff Catherine Brown filed this suit against Minyango Tokpah, Andrea Stewart, and others, alleging that each had engaged to some degree in stalking, harassing, threatening, attacking, intimidating, or defaming her through online activity.[1] Generally, Plaintiff claims that Defendants are individuals using online platforms like YouTube to engage in "cyber and online harassment" that began around October 1, 2020 and has persisted since.[2]

---

[1] Plaintiff's Second Amended Complaint alleges "cyber stalking, harassment, defamation, threats to her life and safety, some incidents of actual physical stalking and intimidation, . . . intentional infliction of emotional distress . . ., and other such crimes and civil tortuous [sic] acts committed by those defendants as described below." Doc. 47 at 2.
[2] *Id.*

1

Plaintiff, a Delaware domiciliary at the time of filing this case, advances that she suffered much of this harassment while residing part time in Louisiana. Defendants are allegedly domiciled in states other than Delaware.[3] Judging by Plaintiff's briefing and representations to the Court, Plaintiff's legal claims appear to be defamation and intentional infliction of emotional distress.[4] Below are the facts from Plaintiff's Second Amended Complaint that are relevant to the instant Motion and assumed true for purposes of a motion to dismiss.[5]

Plaintiff alleges that Defendant Andrea Stewart is a California resident who is the sole member and CEO of Defendant Anti Fraud Warriors, LLC ("AFW").[6] Plaintiff claims that AFW and its leaders pay individuals known as "Good Guys" to harass people over the internet, and Plaintiff is allegedly one of their targets.[7] More specifically, Plaintiff alleges that AFW and its "Good Guys" are opponents of "Pan African Activist leader Dr. Umar Johnson" because they believe he "is a scammer or some type of fraudulent enemy of the Black community."[8] AFW allegedly claims that Plaintiff is an affiliate of Dr. Johnson, and so its vitriol against him extends to her, thereby making her a target for harassment and threats by individuals in the AFW community.[9] This

---

[3] *Id.* at 5–13. Plaintiff also alleges an amount in controversy in excess of $75,000, exclusive of interest and costs. *Id.* at 3.
[4] *See id.* at 2; Doc. 24 at 49.
[5] *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).
[6] Doc. 47 at 6–7.
[7] *Id.* at 18–20.
[8] *Id.* at 19.
[9] *Id.* at 19–20.

2

community appears to be made up of other Defendants, as well as followers and viewers of Stewart's YouTube channels.[10]

Plaintiff alleges that Stewart uses these channels to foment animus against her among viewers.[11] Plaintiff also alleges that Stewart has defamed her on multiple occasions on her channel, including falsely claiming that Plaintiff filed fraudulent police reports against various Black individuals, including Stewart herself.[12] Other instances of Stewart's defamation include representing that Plaintiff told the police that Stewart is an Aryan who is harassing others, stating that Plaintiff is guilty of criminal charges, and describing Plaintiff as a "menace to mankind."[13]

Plaintiff alleges that Defendant Palmer is affiliated with AFW and often appears on his own YouTube channels in support of AFW.[14] More specifically, Plaintiff claims that Palmer told viewers during a livestream that Plaintiff filed a false police report against a Black man named Lenon Honor.[15]

Now before the Court is the Motion to Dismiss filed by Defendants Stewart, Palmer, and AFW (collectively, "Movants").[16] Movants seek dismissal on the grounds that this Court lacks personal jurisdiction over them.[17] Plaintiff opposes.[18]

---

[10] *Id.* at 7, 42–43, 68–73.
[11] *Id.* at 43.
[12] *Id.* at 43–52.
[13] *Id.* at 52, 43–51.
[14] *Id.* at 80.
[15] *Id.*
[16] Doc. 51.
[17] Doc. 51-1 at 6–9. Movants also seek dismissal on two alternative grounds: improper venue and failure to state a claim upon which relief can be granted. *Id.* at 10–19.
[18] Doc. 62.

3

## **LEGAL STANDARD**

When a non-resident defendant challenges the court's personal jurisdiction, "the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."[19] When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction.[20] "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[] for purposes of determining whether a prima facie case for personal jurisdiction has been established."[21] "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings."[22] The court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery.[23]

Jurisdiction over a non-resident defendant is proper when (1) the defendant is amenable to service of process under the long-arm statute of the forum state and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.[24] In the instant case,

---

[19] Luv N'care, Ltd. v. Insta–Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (citing Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982)).
[20] Guidry v. U.S. Tobacco, Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999).
[21] Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985) (citing DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1270 (5th Cir. 1983)).
[22] Jobe v. ATR Mktg., Inc., 87 F.3d 751, 753 (5th Cir. 1996).
[23] *Id.* (citing Colwell Realty Invs. v. Triple T. Inns of Ariz., 785 F.2d 1330 (5th Cir. 1986)).
[24] Dalton v. R&W Marine, Inc., 897 F.2d 1359, 1361 (5th Cir. 1990).

"these two inquiries merge into one because Louisiana's long-arm statute permits service of process coterminous with the scope of the due process clause."[25]

"The Due Process Clause of the Fourteenth Amendment protects a corporation, as it does an individual, against being made subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'" A court may exercise personal jurisdiction over a non-resident defendant when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."[26]

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction.[27] Specific personal jurisdiction exists (1) when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state; (2) the controversy arises out of or is related to those activities; and (3) the exercise of jurisdiction is fair, just, and reasonable.[28]

---

[25] Pervasive Software Inc. v. Lexware GMBH & Co. KG, 688 F.3d 214, 220 (5th Cir. 2012) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 319 (1945)).
[26] Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe*, 326 U.S. at 316).
[27] Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000).
[28] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

## LAW AND ANALYSIS

Movants argue that this Court lacks specific personal jurisdiction over Plaintiff's claims against them.[29] Plaintiff counters that her allegations support specific jurisdiction.[30] This Court finds that Plaintiff has not carried her burden of proving specific personal jurisdiction over Movants.

"When analyzing intentional tort claims, such as defamation, for specific jurisdiction, the Fifth Circuit applies the 'effects test' first formulated in *Calder v. Jones*."[31] "Under the 'effects test,' an act done outside the state that causes injury inside the state may support personal jurisdiction if the defendant 'expressly aimed' his conduct towards the forum."[32] For example, in *Calder*, a Hollywood tabloid published an allegedly libelous story about the actress Shirley Jones.[33] Naming the author of the story and editor of the tabloid as defendants, Jones sued in California, despite the defendants' residences in Florida.[34] The Supreme Court held that there was jurisdiction in California over the defendants because they had "expressly aimed" their conduct towards California:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the

---

[29] Doc. 51-1 at 6–10.
[30] Doc. 62 at 14–18.
[31] Siddhar v. Varadharajan, No. 4:13–CV–1933, 2014 WL 2815498, at *4 (S.D. Tex. June 20, 2014) (citing Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002) (citing Calder v. Jones, 465 U.S. 783 (1984))).
[32] *Id.* (quoting *Revell*, 317 F.3d at 472).
[33] *Calder*, 465 U.S. at 785.
[34] *Id.*

6

> injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and the harm.[35]

The Fifth Circuit has stated that "[w]e read *Calder* as requiring the plaintiff seeking to assert specific personal jurisdiction over a defendant in a defamation case to show '(1) the subject matter of and (2) the sources relied upon for the article were in the forum state.'"[36] The court has focused especially on the requirement that "the forum 'be the focal point of the story.'"[37]

The U.S. Supreme Court has since further clarified its holding in *Calder* in a way that is relevant to this case.[38] In *Walden v. Fiore*, the Court explained, "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff."[39] "[T]he plaintiff cannot be the only link between the defendant and the forum."[40] In *Calder*, "the 'effects' caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there."[41] "That connection, *combined with the various facts that gave the article a*

---

[35] *Id.* at 788–89.
[36] Clemens v. McNamee, 615 F.3d 374, 380 (5th Cir. 2010) (quoting Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 426 (5th Cir. 2005)).
[37] *Id.* at 379 (quoting *Calder*, 465 U.S. at 788–89); *See* Herman v. Cataphora, Inc., 730 F.3d 460, 465 (5th Cir. 2013) ("In applying the *Calder* analysis, we have emphasized the importance of the 'focal point' language.").
[38] Walden v. Fiore, 571 U.S. 277, 286–88 (2014).
[39] *Id.* at 287.
[40] *Id.* at 285.
[41] *Id.* at 288.

7

*California focus*, sufficed to authorize the California court's exercise of jurisdiction."[42]

The Fifth Circuit has stated that *Walden* "emphasizes that it is the defendant's contacts with the forum state, and not just the plaintiff, that must drive the personal jurisdiction analysis."[43] "It is insufficient for the defendant to simply have knowledge of a plaintiffs' [sic] 'strong forum connections.'"[44]

> The Supreme Court recently clarified the form that forum contacts must take in intentional tort cases for the effects to be applicable, reiterating that mere injury to a forum resident is not a sufficient connection to the forum. *Walden*, 134 S.Ct. at 1125. . . . The proper question is not whether [the plaintiff] experienced an injury or effect in a particular location, but whether [the defendant's] conduct connects it to the forum in a meaningful way. [The plaintiff's] presence in the Gulf of Mexico/Port of Houston is largely a consequence of *his* relationship with the forum, and not of any actions [the defendant] took to establish contacts with the forum.[45]

With these guiding principles in mind, the Court returns to the question at hand: whether the focal point of Movants' defamatory statements is Louisiana.

Taking Plaintiff's allegations as true, and resolving all factual disputes in her favor, this Court finds that Louisiana is not the focal point of the alleged instances of defamation. This is clear from Plaintiff's allegations. As to Defendant Stewart, Plaintiff alleges as follows:

(1) on June 3, 2021, Stewart emailed police in Wilmington, Delaware that Plaintiff had filed a false police report and was a "menace to mankind"[46];

---

[42] *Id.* (emphasis added).
[43] Defense Distributed v. Grewal, 971 F.3d 485, 495 (5th Cir. 2020).
[44] *Id.* (quoting *Walden*, 571 U.S. at 289.
[45] Sangha v. Navig8 ShipManagement Private Ltd., 882 F.3d 96, 103–04 (5th Cir. 2018).
[46] Doc. 47 at 52.

8

(2) on July 22, 2021, Stewart told viewers online that Plaintiff filed false police reports against her and that Plaintiff told the police that Stewart was an Aryan who was harassing others[47];

(3) on that same day, Stewart stated online that Plaintiff is guilty of a crime involving co-Defendant TCTV, another content creator, who is presumably located in Pennsylvania[48];

(4) in February 2022, Stewart posted a video saying Plaintiff was impersonating someone else online, which is alleged to be a crime[49];

(5) that same month, Stewart uploaded a video on the internet falsely accusing Plaintiff of calling 911 and telling the police that Stewart is a white supremacist[50];

(6) that same month, in an interview posted online, Stewart falsely accused Plaintiff of distributing pornographic pictures of Lenon Honor, who is not a Louisiana resident[51];

(7) in March 2022, in a YouTube video, Stewart charged Plaintiff with filing police reports stating that Stewart is a white woman who injures Black people; Stewart also claimed that Plaintiff had falsely claimed for years to be a white woman[52];

---

[47] *Id.* at 51.
[48] *Id.* at 52. There is no allegation as to TCTV's identity or domicile, but this actor is apparently represented by Defendant Theresa Brunson, who is allegedly domiciled in Pennsylvania. *Id.* at 8–9.
[49] *Id.* at 46.
[50] *Id.* at 47.
[51] *Id.* at 48.
[52] *Id.* at 43.

9

(8) in April 2022, in another online video, Stewart falsely accused Plaintiff of filing a false report with police in Utah against Mr. Honor;[53] and

(9) finally, on June 28, 2022, Stewart stated online that Plaintiff is "a demonic minion of Umar Johnson."[54]

Plaintiff makes no additional allegations of defamation as to AFW.[55] As to Defendant Palmer, Plaintiff alleges that in February 2022 during a livestream, Palmer falsely charged Plaintiff with filing a fraudulent police report in Utah against Mr. Honor.[56]

Most of these allegations concern Plaintiff making false representations to police. As far as the Court can tell, if Plaintiff did contact the police, she did not do so in Louisiana. The only police mentioned are in Wilmington, Delaware and another department in Utah. Because Plaintiff used to live in Delaware, it is likely that if she did contact the Delaware police (fraudulently or not), she did so there, not in Louisiana. Additionally, all of the alleged statements were made on YouTube, which is accessible in all states and shares no special connection to Louisiana. There is no allegation that the viewers or followers of Stewart and Palmer's YouTube channels are disproportionately from Louisiana, or that Movants directed their statements at Louisiana audience members in particular.

---

[53] *Id.* at 44–45, 70 ("Individuals, who will remain unnamed in this filing, made a police report with the Utah police (where Lenon Honor resides) stating that Lenon Honor had cyber bullied [sic] the minor child by making direct statements that Umar Johnson does not care about her.").
[54] Doc. 67 at 6.
[55] *See* Doc. 47 at 67–73.
[56] *Id.* at 70, 80.

10

This case is similar to *Clemens v. McNamee*.[57] There, at issue were public statements about a professional basketball player made by his former trainer.[58] The court held that the plaintiff failed to make a prima facie showing that the defendant made statements in which Texas was the focal point: "the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state."[59] Here, none of the statements appear to have been made in Louisiana or directed at residents of Louisiana. Much of the activity at issue—such as the filing of police reports—also appears to have taken place outside of Louisiana. Plaintiff repeatedly emphasizes that Movants must have known that Plaintiff was in Louisiana at the time of making these statements, but that does not prove that Louisiana was the focal point of the defamation.[60]

As to whether some of the other activities and behavior attributed to Plaintiff occurred in Louisiana, the Court cannot say. This is, in part, because Plaintiff alleges that these occurrences did not happen—that she never circulated pornographic pictures period, much less in Louisiana, for example. But even bearing that in mind, these defamatory statements must have been made in reference to a greater factual context than Plaintiff alleges—which is almost none. Plaintiff merely provides a terse, nebulous paraphrasing of each defamatory statement that falls far short of explaining the "who, what, when,

---

[57] 615 F.3d 374.
[58] *Id.* at 380.
[59] *Id.*
[60] *See Herman*, 730 F.3d at 465 ("Even so, the fact that Chadderdon knew Herman and Levin engaged in some activity in Louisiana is not sufficient to prove the allegedly defamatory statements themselves were made in reference to that activity.").

11

where, why, and how" of the wrongdoing and its connection to Plaintiff's injuries.[61] Accordingly, the Court finds that Plaintiff has not made a prima facie showing that personal jurisdiction extends to Movants.[62]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Movants' Motion to Dismiss (Doc. 51) is **GRANTED**. Plaintiff's claims against Defendants Andrea Stewart, Gerald Palmer, and Anti Fraud Warriors, LLC are hereby **DISMISSED WITHOUT PREJUDICE**.[63]

New Orleans, Louisiana this 3rd day of November, 2022.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[61] Verret v. North Star Marine, LLC, No. 09–3442, 2009 WL 3614502, at *2 (E.D. La., Oct. 28, 2009) (citing Bitte v. United Cos. Lending Corp., No. 06–5648, 2006 WL 3692754, at *1 (E.D. La. Dec. 11, 2006)).

[62] *See Clemens*, 615 F.3d at 378 ("The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant and that burden is met by making a prima facie showing.").

[63] *See* ITL Intern, Inc. v. Cafe Soluble, S.A., 464 F. App'x. 241, 244 (5th Cir. 2012) ("Mars correctly insists that a dismissal 'for lack of jurisdiction' does not 'operate[ ] as an adjudication on the merits' and thus should have been without prejudice.") (citations omitted).