## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CATHERINE BROWN** | * | **NO. 2:21-CV-01844-JTM-JVM** |
| | * | |
| **VERSUS** | * | **JUDGE JANE TRICHE** |
| | * | **MILAZZO** |
| **MINYANGO TOKPAH ET AL.** | * | |
| | * | **MAG. JUDGE JANIS VAN.** |
| | * | **MEERVELD** |
| | * | |

---

### MEMORANDUM IN SUPPORT OF
### MOTION TO ENFORCE COMPROMISE AGREEMENT

**NOW INTO COURT**, comes D.M.[1], through undersigned counsel, who respectfully submits this Memorandum in Support of her Motion to Enforce Compromise Agreement and provides as follows:

### RELEVANT FACTS

### I.    Plaintiff's Three Complaints.

Three years ago, Plaintiff Catherine Brown, a resident of Delaware[2] who claims to be a "frequent and part-time resident of the State of Louisiana," filed this action claiming that she was being harassed and defamed online. Rec. Doc. 1 at p. 1. Brown initially named seven parties as defendants to her action and 11 others as "[a]liased-named [sic]defendants." Rec. Doc. 1 at pp.

---

[1]    "D.M." are movant's initials. She submits this motion under her initials to preserve the purpose of her compromise agreement with Plaintiff Brown wherein Brown agreed to withdraw a filing (Rec. Doc. 73 and 73-1) that lists non-party D.M.'s legal name. D.M. is a skilled professional who relies upon her reputation to attract clients. In the filing above, Brown spuriously, falsely, and frivolously alleged that D.M., who is not a party to this litigation, assumed fraudulent identities and/or engaged in cyberattacks (allegations for which Brown has no good faith basis). Accordingly, the purpose of D.M.'s agreement with Brown was to avoid any connection in the public record between D.M.'s legal name and Brown's false allegations.

[2]    In sworn testimony before the Court, Brown later claimed to live in "Acadiana [Parish], Louisiana," a parish that does not exist. Rec. Doc. 24, p. 10:4. It is unclear whether Ms. Brown was mispronouncing the name of Acadia Parish and purporting to reside there. Notably, Acadia Parish is in the Western District of Louisiana.

4-7.  Brown's complaint alleged that this Court has jurisdiction over her claims because she was in Orleans Parish when she viewed the defendants' online comments.  *Id.* at p. 10.

An online poster known as "Scarlit" was one of the 11 "aliased-named defendants" identified in Brown's original complaint.  Rec. Doc. 1 at p. 7.   Brown's complaint generically alleged that "Scarlit… engaged in a series of harassing and defamatory online postings and broadcasts which are illegal and tortuous [sic]."   *Id.* at p. 33.  The complaint failed to allege any specific actions by "Scarlit" that would state a claim, merely alleging in general terms that "Scarlit" purportedly "posed as a married male with a wife and children," and that she creates "other online accounts where this actor pretends to be [Ms. Brown] and antagonizes other persons…"  *Id.* at p. 34.  Brown's original complaint claimed that this action "can reasonably create a climate and animus against [Brown] which leads to additional cyberbullying, threats, defamation, damage to her business endeavors and those affiliated with her, as well as potential actual violence."  *Id.* Brown then claimed that these facts were "profoundly upsetting her to the point of medical injury and treatment, which she intends to seek in the very near future."  *Id.*

Five days after filing the original complaint, Ms. Brown filed an amended complaint.  Rec. Doc. 7.  In the amended complaint, "Scarlit" and 12 other aliases were removed as defendants by Ms. Brown, and instead named as "non-defendant, aliased actors."  *Id.* at pp. 7-8.  Over six months later, Ms. Brown filed another amended complaint, again naming "Scarlit" among the "non-defendant actors… aligned with the named defendants."  Rec. Doc. 47 at p. 14.  Given that "Scarlit" was no longer a defendant in this action, no summons was ever issued to "Scarlit," "Scarlit" was never served with any filings, nor did "Scarlit" ever file an appearance in this case.

II.     **The Court Dismisses Brown's Jurisdictional Claims Against Served Defendants and Orders Brown to Show Cause.**

Defendants Theresa Brunson, Andrea Stewart, Gerald Palmer, and Anti Fraud Warriors, LLC ("AFW") were served with summons in this matter, and each moved to dismiss Brown's claims for lack of jurisdiction.  In 2022, the Court dismissed all of Brown's claims against all four moving defendants, finding that Brown's jurisdictional arguments fail.  Specifically, in dismissing claims against Brunson, the Court rejected Brown's argument that alleged defamatory or harassing statements by out-of-state defendants were subject to the Court's jurisdiction under the *Calder v. Jones,* 465 U.S. 783 (1984).  Under *Calder*'s "effects test," this Court found that Brown's bare assertion that she was allegedly present in Louisiana when she viewed these online comments is insufficient to confer jurisdiction.  *E.g.*, Rec. Doc. 43 at p. 7.

In dismissing the claims against Stewart, Palmer, and AFW, the Court reiterated the failure of Brown's alleged jurisdictional basis, finding that "none of the statements appears to have been made in Louisiana or directed at residents of Louisiana…" and that Brown has not proven that "Louisiana was the focal point of the defamation."  Rec. Doc. 68 at p. 11.  The Court further found that Brown's "terse, nebulous paraphrasing of each defamatory statement" made by the out-of-state defendants "falls far short of explaining the 'who, what, when, where, why, and how' of the wrongdoing and its connection to…" Brown's alleged "injuries."  *Id.*

After Brown's jurisdictional arguments were rejected by the Court, Brown took no steps to prosecute this litigation for over a year, prompting the Court to issue a "Notice to Show Cause" in early 2024.  Rec. Doc. 69.  The Court's notice provides that defendants Minyango Tokpah, Tanisha Wright, and Jonte Miller were allegedly served by plaintiff, but no action had been taken against them.  *Id.*  The notice further provided that Summons Returns had not been filed "as to any of the remaining active defendants" in the matter, and that the deadline for service

3

under Fed. R. Civ. Proc. 4(m) was months in the past.  *Id.*  The Court gave plaintiff's counsel "up to and including February 14, 2024 to further prosecute their claim(s), obtain responsive pleadings and/or file returns of service as to the above-named defendants," and if plaintiff's counsel could not do so or "show good cause in writing as to why this case should not be dismissed" that the matter would be dismissed "in its entirety."  *Id.*

### III.   Brown's Bizarre Response to the Court's "Show Cause" Order Identifies and Defames D.M., Even Though It Purports to Dismiss Non-Existent Claims Against Her.

In response to the Court's "Show Cause," plaintiff's counsel filed a "Reply to Notice to Show Cause Order" explaining the reasons for the delays in prosecuting Ms. Brown's claims against the named defendants.  However, in an unconventional step, plaintiff's counsel appended to this "Reply," an email (Rec. Doc. 73-1) sent to him by Ms. Brown containing a list of "persons or entities previously named as actors and defendants in previously injuring her" that she seeks to "remove[ ] from this litigation" because she "no longer seeks to pursue" them.  Rec. Doc. 73.

In the "Reply," counsel listed five such individuals by their aliases only, but also listed "Scarlit, <u>otherwise identified as [D.M.]</u>[3]" among the defendants to be "removed" from the litigation.  Rec. Doc. 73 (emphasis added).  In the email (Rec. Doc. 73-1) attached to the "Reply," Brown lists several aliases under a heading that reads "Remove" with her purported "Reason" for the request provided below the alias.  *Id.*  Brown identifies that she wants to "remove" "[D.M.][4] aka Actor Scarlit, Defendant" from the litigation, and further alleges that D.M. is "[k]nown for having multiple accounts (male and female actors)," that D.M. "created accounts pretending that

---

[3]      Brown's counsel used D.M.'s legal name.
[4]      Brown used D.M.'s legal name as above.

these accounts were Catherine Brown (who was allegedly harassing other, including [D.M.] online)," and that D.M. participated in a "cyber attack" against Brown.

D.M., a resident of New York, later discovered through an internet search that Brown and her counsel had filed these publicly available documents (Rec. Doc. 73 and 73-1) accusing her of online harassment, creating false identities, impersonating others, and engaging in a cyber-attack despite the fact that she is not a party to this litigation.

## IV.    Brown and D.M. Agree to Resolve D.M.'s Claims Against Brown.

Brown and her counsel's mentions of D.M.'s in their filings are as unnecessary as they are defamatory. "Scarlit" has not been a defendant in this matter since October 2021, so there was no need to "remove" Scarlit as a defendant. Moreover, even if Brown and/or her counsel felt the need to inform the Court that Brown has no desire to pursue claims against "Scarlit," a former defendant alias, there was no need to publicly identify D.M. for the first time as the aliases' suspected user and to accuse her of a multitude of bad acts. There was no good faith reason to identify D.M. in these filings, so this decision clearly originated out of a desire by Brown to deliver a parting shot to D.M. through her counsel's filing.

Upon discovering these filings, D.M. obtained Louisiana counsel. Undersigned counsel sent a demand letter (attached hereto as Exhibit A) to Brown's counsel identifying some of the many claims that D.M now has against Brown because of Brown's conduct in this litigation. Specifically, D.M. expressed that she intended to seek sanctions against Brown and her counsel because (1) Brown's filings (Rec. Doc. 73, and 73-1) lack good faith bases for their statements about D.M., (2) Brown initiated this litigation in bad faith in a jurisdiction where neither D.M. nor Brown reside, and where the Court has repeatedly held that it does not have jurisdiction, and (3) Brown's has used these proceedings (in which D.M. is not a party) in bad faith to make outrageous

allegations about D.M. under the guise of legitimate federal court filings.  The purpose of Brown's conduct is to embarrass and retaliate against D.M., whom Brown perceives as a critic of her views. In addition, D.M. has a claim against Brown under Anti-SLAPP laws, because Brown's false and frivolous claims are merely designed to discourage D.M. from criticizing her online and retaliate against her for D.M.'s exercise of her first amendment rights.

However, the demand further provided an offer to compromise - D.M. would not pursue sanctions or other motions which might require Brown to pay D.M.'s fees or other penalties if Brown simply withdrew her filing containing D.M.'s name and replaced it with an identical filing that redacted D.M.'s name.  If Brown agreed to do so, D.M. agreed to forego filing a Motion to Strike, Anti-SLAPP motion, and a Motion for Sanctions seeking costs, attorney's fees and applicable penalties.

Brown's counsel contacted undersigned counsel and indicated that Brown agreed to the proposed resolution but asked that undersigned counsel prepare the motion for leave to remove and replace filings Rec. Doc. 73 and 73-1.   Undersigned counsel agreed to do so, and on April 17, 2024, provided a draft motion and instructions for redacting the replacement filings.  *See* Exhibit B attached hereto.  Undersigned counsel asked that the motion be filed within seven days. *See id.*  Brown's counsel asked for additional time to file as he was on vacation, and undersigned counsel obliged. On April 30, 2024, Brown's counsel notified undersigned counsel that Brown "agrees to" the motions as proposed, and that Brown's counsel was working to "complete the filing" soon.  *See* Exhibit C attached hereto.

V.      **Brown Breaches the Compromise Agreement.**

On May 2, 2024, undersigned counsel inquired with Brown's counsel regarding the status of the filing.  Brown's counsel responded as follows, indicating that Brown would not abide by her agreement:

> My Client, after consideration, my Client, Catherine Brown, has instructed me to NOT file any motions to voluntarily remove [D.M.] from this litigation, given [D.M.'s] participation in ridiculing and harassing my Client, Ms. Brown, online and in published online panels. It is also our understanding that [D.M.] has publicly ridiculed me as Ms. Brown's attorney in this litigation in published forums.
>
> My Client respectfully asks that [D.M.] properly respond to this lawsuit.
>
> Given our previous discussions regarding the possibility of the Plaintiff agreeing on removing or dismissing [D.M.] from the litigation voluntarily, l will take no adverse actions against [D.M.] for the next thirty (30) days, after which time I will be obliged to seek an entry of default if service has been properly made against [D.M.] here.

*See* Exhibit D attached hereto (emphasis original).

This message from Brown's counsel is notable for several reasons.  First, Brown gives no reason for backing off her agreement other than her animosity toward D.M. and her displeasure with D.M.'s criticism.  Second, Brown's counsel suggests that his client is breaching her agreement with D.M. in part because D.M. allegedly criticized Brown's counsel.  Neither allegation cites any specifics.

Third, the message provides wrongly asserts that D.M. is a party to this litigation and that she could be subject to default if she does not file a response to Brown's frivolous claims.  As provided above, D.M. has never been named in any complaint, she is not a party to this suit, and she has never been served.  In fact, even the party identified as "Scarlit," D.M.'s purported alias according to Brown, was removed as a defendant by Brown back in October 2021.  Brown

and her counsel's refusal to redact D.M.'s legal name from Rec. Doc. 73 and 73-1 necessitates this motion.

## LAW AND ARGUMENT

Compromise agreements are "highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975). Under Louisiana law, a "compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." *Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co*., 622 F.3d 384, 390 (5th Cir. 2010) (citing La. Civ. Code art. 3071). Emails can qualify as "signed writings" under La. Civ. Code art. 3072, and thus emails between counsel that set forth a compromise are enforceable agreements under Louisiana law. *See Riley v. Cantrell*, No. 19-13950, 2022 WL 11765591, at *3 (E.D. La. Oct. 20, 2022). In fact, multiple emails between counsel, even if over a period of months, can form the basis of a valid compromise agreement. *Preston Law Firm, L.L.C.*, 622 F.3d at 391("[t]he March 24 Email and August 9 Email combine to form a valid compromise as a matter of law").

District courts have an inherent power to enforce settlement agreements. *See David v. Deep S. Towing, Inc.*, No. 91-2842, 1992 WL 236922, at *1 (E.D. La. Aug. 31, 1992) ("The Fifth Circuit has invariably conceded to the district courts an inherent power to enforce settlement agreements") (citing *Eastern Energy, Inc. v. UNICO Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988) and *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987)). Courts are also authorized to tax fees and costs upon parties who refuse to abide by those agreements. *See Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 897 (5th Cir. 2012). In *Seals*, the Fifth Circuit upheld a district court's ruling that enforced a settlement agreement between the parties

and awarded attorney's fees and costs against the party who failed to comply with the agreement. The court found comparable a party's baseless refusal to abide by a settlement agreement to a party's unfounded refusal to comply with an arbitration award, noting that such a refusal "without justification qualifies as vexatious behavior that can support the award of attorneys' fees by a federal court." *Id.* (citing *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 658 (5th Cir. 2000)) (quotations omitted).

In this case, D.M. proposed a compromise wherein she would forego filing a motion to strike, for sanctions, and/or under Anti-SLAPP laws, if Brown agreed to redact her name from Rec. Doc. 73 and 73-1.  D.M. by offering to forego seeking fees and costs if her name was protected and Brown by agreeing to withdraw and redact her filing.   Brown's counsel agreed by phone and requested undersigned counsel to prepare a draft motion, which undersigned counsel did.  Brown's counsel then reiterated in writing that Brown agreed to file the motion so that D.M.'s name could be removed from said filings.  *See* Ex. C.  Accordingly, the parties plainly have a binding compromise, evidenced in writing, that should be enforced by the Court.

Moreover, the Court should award D.M. all attorney's fees and costs incurred in submitting this motion because of Brown and her counsel's conduct.  Brown's counsel provided no valid reason why the compromise was unfair or invalid. Specifically, Brown's counsel stated that Brown had reversed her position, explaining that she believed D.M. has "ridiculed and harassed" her without citing any evidence, and that D.M. has also "ridiculed" Brown's counsel. *See* Ex. D.  These comments are proof positive that Brown breached the compromise agreement in bad faith and merely because of her animosity toward D.M

If Brown's bad faith in breaching the compromise were not already apparent, the message went on to threaten to litigate frivolous claims against D.M. in this lawsuit, presumably

as retribution for D.M.'s purported comments "ridicul[ing]" her. Without basis, Brown threatened to seek an "entry of default" against D.M. who is not a party to this suit. Even "Scarlit," the alias that Brown asserts is used by D.M., has not been a party to this suit since Brown voluntarily dismissed "Scarlit" in 2021. Threatening to seek a default against a party who has not even been named as a defendant nor served is patently unsupported by the law and evidences vexatious conduct.

Further, both Brown and her counsel are abundantly aware that this Court has no jurisdiction over the out-of-state defendants like D.M. in this matter. Every defendant in this matter who has moved to dismiss Brown's claims for lack of jurisdiction has succeeded, because the Court has found that Brown's thin assertion that she viewed the defendants' allegedly negative comments about her in this district (where neither she nor the defendants reside) is insufficient to confer jurisdiction upon this Court. Brown and her counsel's threat to litigate against D.M. in this Court, when the Court clearly lacks jurisdiction over Brown's claims against D.M., is similarly proof positive of Brown's vexatious intentions.

Accordingly, D.M. asks that her motion to enforce the compromise agreement be granted and that in granting the motion, the Court order that Rec. Doc. 73 and 73-1 be redacted to remove her legal name. And given the clear breach of the compromise and the vexatious conduct from Brown, D.M. submits that she should also be awarded all attorney's fees and costs incurred in bringing this motion.

**WHEREFORE**, after due proceedings, D.M. respectfully requests that the Motion be granted, that Rec. Doc. 73 and 73-1 be redacted to remove her legal name, that a judgment be entered against Catherine Brown awarding D.M. all reasonable attorney's fees and cost associated

with bring this motion, and for all other relief allowed by law and appropriate under the circumstances.

Respectfully submitted,

/s/ Jacob K. Weixler
Jacob K. Weixler, 36076
WEIXLER LAW LLC
1239 Baronne St., Suite D
New Orleans, LA 70113
Phone: (504) 408-2180
Fax:    (504) 814-1728
jkw@weixlerlaw.com

*Counsel for D.M.*