# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

CATHERINE BROWN                         NO. 2:21-CV-01844-JTM-JVM

VERSUS                                  JUDGE JANET TRICHE MILAZZO

MINYAGO TOKPAH, ET AL.                  MAG. JUDGE JANIS VAN MEERVELD

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE COMPROMISE AND MOTION TO REDACT OR STRIKE

**NOW INTO COURT**, comes D.M., through undersigned counsel, who respectfully submits this Memorandum in Support of her Motion to Enforce Compromise and Motion to Redact or Strike, and provides as follows.

## SUMMARY OF ARGUMENT

D.M. has intervened in this matter for the limited purpose of protecting her personal and professional reputation from false allegations made by Plaintiff Catherine Brown in public court filings. Despite never having been named as a defendant to this litigation, Brown bizarrely included D.M.'s name in Plaintiff's "Reply to Notice to Show Cause Order" (Rec. Doc. 73) and the attached email (Rec. Doc. 73-1). In these documents, Brown falsely accuses non-defendant D.M. of online harassment, creating false identities, impersonating others, and engaging in cyber-attacks. These baseless allegations threaten D.M.'s professional standing as she relies upon her reputation to attract clients in her field.

After these filings came to D.M.'s attention, D.M. retained counsel and reached a compromise agreement with Plaintiff wherein Plaintiff agreed to redact D.M.'s name from the public records in exchange for D.M. foregoing motions for sanctions and other claims for relief. However,

Ms. Brown reversed course, refusing to file the necessary motion to replace the offending filings with redacted filings. Ms. Brown wrote that she refused to comply with her obligations because she believes D.M. criticized Brown and her counsel.

D.M. filed a motion to enforce the compromise agreement. Rec. Doc. 79. Brown's response acknowledged that she "did in fact" reach an "earlier compromise… between counsel," but failed to address whether that compromise should be enforced. Rec. Doc. 80 at pp. 2-3, 7. The Court found that the motion must be denied because "although Plaintiff's statements suggest otherwise, D.M. is not a party to this suit." Rec. Doc. 83 at p. 8. As such, the Court found that "D.M. must either file a motion to intervene…" or a separate suit to obtain standing to enforce the agreement. *Id.*

Despite Brown's acknowledgment that she reached an agreement in April 2024 to remove D.M.'s name from her filings, Brown has continued to file documents on the public docket identifying D.M. In September 2024, Brown filed an unredacted email as an exhibit to her response to the motion to enforce which contains D.M.'s last name (Rec. Doc. 80-1). And then in January 2025, in another "reply" to a Court order to show cause, Brown again identified D.M. by her full name in the exact same manner as she did in her prior filings. Rec. Doc. 82 at p. 9.

D.M. moved to intervene in this matter to protect herself from Ms. Brown's ongoing use of these proceedings to defame her. Rec. Doc. 88. D.M.'s motion was granted. Rec. Doc. 93. D.M. now asks the Court to grant her re-urged motion to enforce compromise agreement, further awarding her all costs and fees associated with bringing this motion. In enforcing the compromise agreement, D.M. asks the Court to redact or strike the documents that defame her: Rec. Doc. 73, 73-1, 80-1, and 82.

Alternatively, should the Court find it necessary to receive additional evidence and testimony in this matter, D.M. respectfully requests that the Court set this motion for an evidentiary hearing.

**RELEVANT FACTS**

Three and a half years ago, Plaintiff Catherine Brown filed this action claiming she was being harassed online. Brown is a resident of Delaware[1] who claims to be a "frequent and part-time resident of the State of Louisiana," and that she viewed this online harassment while present in Orlean Parish. Rec. Doc. 1 at pp. 1, 10. In her original complaint, Brown named seven parties as defendants and identified eleven others as "aliased-named defendants," including an online poster known as "Scarlit." Rec. Doc. 1 at pp. 4-7. Brown's complaint generically alleged that "Scarlit... engaged in a series of harassing and defamatory online postings and broadcasts which are illegal and tortuous [sic]." *Id*. at p. 33. The complaint failed to allege any specific actions by "Scarlit" that would state a claim, merely alleging in general terms that "Scarlit" purportedly "posed as a married male with a wife and children," and created "other online accounts where this actor pretends to be [Ms. Brown] and antagonizes other persons..." *Id*. at p. 34.

Five days after filing the original complaint, Brown filed an amended complaint in which "Scarlit" and twelve other aliases were omitted as defendants and instead named as "non-defendant, aliased actors." Rec. Doc. 7 at pp. 7-8. Over six months later, Brown filed another amended complaint, again naming "Scarlit" among the "non-defendant actors... aligned with the named defendants." Rec. Doc. 47 at p. 14. As "Scarlit" was no longer a defendant in this action, no summons was ever issued to "Scarlit," "Scarlit" was never served with any filings, nor did "Scarlit" ever file an appearance in this case.

In early 2024, the Court issued a "Notice to Show Cause" (Rec. Doc. 69) after Brown took no steps to prosecute this litigation for over a year. In response, Brown's counsel filed a "Reply to

---

1    In sworn testimony before the Court, Brown later claimed to live in "Acadiana [Parish], Louisiana," a parish that does not exist. Rec. Doc. 24, p. 10:4. It is unclear whether Ms. Brown was mispronouncing the name of

Notice to Show Cause Order" explaining the reasons for the delays in prosecuting Brown's claims against the named defendants. However, in an unconventional step, Brown's counsel appended to this "Reply" an email (Rec. Doc. 73-1) sent to him by Brown containing a list of "persons or entities previously named as actors and defendants in previously injuring her" that she seeks to "remove[] from this litigation" because she "no longer seeks to pursue" them. Rec. Doc. 73.

In the Reply, counsel listed five such individuals by their aliases only, but also listed "Scarlit, otherwise identified as [D.M.]" among the defendants to be "removed" from the litigation. Rec. Doc. 73 (emphasis added). In the email (Rec. Doc. 73-1) attached to the Reply, Brown lists several aliases under a heading that reads "Remove" with her purported reason for the request provided below the alias. *Id*. Brown identifies that she wants to remove "[D.M.] aka Actor Scarlit, Defendant" from the litigation, and further alleges that D.M. is "[k]nown for having multiple accounts (male and female actors)," that D.M. "created accounts pretending that these accounts were Catherine Brown (who was allegedly harassing other, including [D.M.] online)," and that D.M. participated in a "cyber attack" against Brown.

D.M., a resident of New York, later discovered through an internet search that Brown and her counsel had filed these publicly available documents (Rec. Doc. 73 and 73-1) accusing her of online harassment, creating false identities, impersonating others, and engaging in a cyber-attack despite the fact that she is not a defendant in this litigation.

Upon discovering these filings, D.M. obtained Louisiana counsel. Undersigned counsel sent a demand letter to Brown's counsel identifying the many claims that D.M. now has against Brown because of Brown's conduct in this litigation. *See* Rec. Doc. 79-2. Specifically, D.M. expressed that she intended to seek sanctions against Brown and her counsel because (1) Brown's filings (Rec. Doc.

---

Acadia Parish and purporting to reside there.  Notably, Acadia Parish is in the Western District of Louisiana.

73 and 73-1) lack good faith bases for their statements about D.M., (2) Brown initiated this litigation in bad faith in a jurisdiction where neither D.M. nor Brown reside, and where the Court has repeatedly held that it does not have jurisdiction, and (3) Brown has used these proceedings (in which D.M. is not a defendant) in bad faith to make outrageous allegations about D.M. under the guise of legitimate federal court filings.

However, the demand further provided an offer to compromise: D.M. would not pursue sanctions or other motions which might require Brown to pay D.M.'s fees or other penalties if Brown simply withdrew her filing containing D.M.'s name and replaced it with an identical filing that redacted D.M.'s name. *See* Rec. Doc. 79-2.

Brown's counsel contacted undersigned counsel and indicated that Brown agreed to the proposed resolution but asked that undersigned counsel prepare the motion for leave to remove and replace filings. Rec. Doc. 73 and 73-1. Undersigned counsel agreed to do so, and on April 17, 2024, provided a draft motion and instructions for redacting the replacement filings. On April 30, 2024, Brown's counsel notified undersigned counsel that Brown "agrees to" the motions as proposed, and that Brown's counsel was working to "complete the filing" soon. *See* Rec. Doc. 79-4. However, on May 2, 2024, Brown's counsel informed undersigned counsel that Brown would not abide by her agreement, stating:

> My Client, after consideration, my Client, Catherine Brown, has instructed me to NOT file any motions to voluntarily remove [D.M.] from this litigation, given [D.M.'s] participation in ridiculing and harassing my Client, Ms. Brown, online and in published online panels. It is also our understanding that [D.M.] has publicly ridiculed me as Ms. Brown's attorney in this litigation in published forums.

> My Client respectfully asks that [D.M.] properly respond to this lawsuit.

> Given our previous discussions regarding the possibility of the Plaintiff agreeing on removing or dismissing [D.M.] from the litigation voluntarily, l will take no adverse

actions against [D.M.] for the next thirty (30) days, after which time I will be obliged
to seek an entry of default if service has been properly made against [D.M.] here.

*See* Rec. Doc. 79-5.

Notably, this message wrongly asserts that D.M. is a defendant in this litigation and could be
subject to default if she does not file a response. As established above, D.M. has never been named
in any complaint, is not a defendant in this suit, and has never been served. Even the party identified
as "Scarlit," D.M.'s purported alias according to Brown, was removed as a defendant by Brown back
in October 2021.

D.M. filed a motion to enforce the compromise agreement.  Rec. Doc. 79.  Brown's response
acknowledged that she "did in fact" reach an "earlier compromise… between counsel," but failed to
address whether that compromise should be enforced. Rec. Doc. 80 at pp. 2-3, 7.  However, the
Court found that the motion must be denied because "although Plaintiff's statements suggest
otherwise, D.M. is not a party to this suit." Rec. Doc. 83 at p. 8.  As such, the Court found that
"D.M. must either file a motion to intervene…" or a separate suit to obtain standing to enforce the
agreement. *Id.*  D.M. filed a motion to intervene (Rec. Doc. 88), which has now been granted (Rec.
Doc. 93).

Despite Brown's acknowledgment that she reached an agreement in April 2024 to remove
D.M.'s name from her filings, Brown has continued to file documents on the public docket
identifying D.M.  In September 2024, Brown filed an unredacted email as an exhibit to her response
to the motion to enforce which contains D.M.'s last name.  Rec. Doc. 80-1.  In January 2025, in
another "reply" to a Court order to show cause, Brown again identified D.M. by her full name in the
exact same manner as she did in her prior reply to a Court's show cause order.  Rec. Doc. 82 at p. 9.

## LAW AND ARGUMENT

### I.  MOTION TO ENFORCE COMPROMISE AGREEMENT

Under Louisiana law, "a compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. Courts may enforce compromise agreements to promote judicial economy and to honor the parties' intent to settle their disputes without further litigation. *See Riley v. Cantrell*, No. 19-13950, 2022 WL 11765591, at *3 (E.D. La. Oct. 20, 2022).

### A.    The Parties Reached a Valid Compromise Agreement

In this case, a valid and enforceable compromise agreement was reached between D.M. and Plaintiff Brown. The essential elements of a compromise agreement were present: (1) mutual intention to settle a dispute and prevent or end litigation; (2) reciprocal concessions by the parties; and (3) a meeting of the minds as to the terms of the agreement. *See Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co*., 622 F.3d 384, 390 (5th Cir. 2010). The compromise agreement was clearly memorialized through written communications between counsel. D.M.'s counsel sent a written demand proposing that D.M. would forego filing motions for sanctions or other penalties if Brown would withdraw her filing containing D.M.'s name and replace it with a redacted version. Brown's counsel confirmed in writing that "Brown agrees to" the proposed motion for leave to remove and replace the filings, which constitutes written acceptance of the compromise terms. *See* Rec. Doc. 79-4.

Under Louisiana law, a compromise agreement need not be contained in a single document and may be established through a series of writings, including correspondence between the parties' attorneys. *See Felder v. Georgia Pacific Corp*., 405 So.2d 521, 523 (La. 1981). Furthermore, email

7

exchanges between counsel can form a binding compromise agreement. *See Riley*, 2022 WL 11765591, at *3 (finding that "emails between counsel for the parties constituted a valid compromise agreement").

B.    The Court Has Authority to Enforce the Compromise Agreement

This Court has inherent authority to enforce a compromise agreement in a case pending before it. *See Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 897 (5th Cir. 2012) (recognizing district court's authority to enforce a settlement agreement in a case pending before it). When a party breaches a compromise agreement, the court may compel performance of the agreement and may award attorney's fees and costs incurred in bringing the motion to enforce. *Id*.

C.    Plaintiff Brown Breached the Compromise Agreement

After agreeing to the compromise, Brown, through counsel, expressly repudiated the agreement on May 2, 2024, stating that she would "NOT file any motions to voluntarily remove [D.M.] from this litigation" despite her previous agreement to do so. *See* Rec. Doc. 79-5. This constitutes a clear breach of the compromise agreement. Under Louisiana law, a compromise has the legal effect of res judicata, and a party may not unilaterally withdraw from a valid compromise agreement. La. Civ. Code art. 3080 ("A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised."). Brown's attempt to renege on the agreement based on alleged criticism by D.M. is legally insufficient to invalidate the compromise, particularly since Brown's counsel had already communicated Brown's agreement to the proposed resolution.

D.    D.M. Is Entitled to Enforcement of the Compromise and Attorney's Fees

When faced with a breach of a compromise agreement, the appropriate remedy is specific performance of the agreement. *See Walton v. Walton*, 597 So.2d 479, 484 (La. App. 1st Cir. 1992).

Accordingly, this Court should order Brown to comply with the compromise by redacting D.M.'s name from the public filings as agreed. Furthermore, D.M. is entitled to recover reasonable attorney's fees and costs incurred in bringing this motion to enforce the compromise agreement. *See Seals*, 482 F. App'x at 897. Brown's refusal to honor the compromise after expressly agreeing to it has forced D.M. to incur additional legal expenses that could have been avoided had Brown complied with her obligations under the agreement.

## II.  MOTION TO REDACT OR STRIKE

Either in enforcing the compromise agreement or otherwise as separate form of relief, D.M. additionally moves this Court to redact or strike the portions of Plaintiff's "Reply to Notice to Show Cause Order" (Rec. Doc. 73 at p. 8), the exhibit attached to the "reply" (Rec. Doc. 73-1 at p. 2), an exhibit to Plaintiff's "Reply/Opposition to Defendant's Motion to Enforce Compromise Agreement," (Rec. Doc. 80-1), and "Petitioner's Reply to Notice to Show Cause Order" (Rec. Doc. 82 at p. 9) that identify D.M. by her legal name and contain false allegations about her conduct. Ms. Brown agreed to remove and replace these filings but has inexplicably declined to do so.

Rule 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" either on its own or on motion by a party. The portions of Plaintiff's filings that identify D.M. by her legal name and accuse her of online harassment, creating false identities, impersonating others, and engaging in cyber-attacks are not only immaterial and impertinent to the Plaintiff's filings, they are also scandalous in that they cast a derogatory light on D.M., who has never been named as a defendant or served in this action.

"Immaterial" means that the matter has no bearing on the controversy before the court, and "impertinent" has been defined as allegations that are not responsive or irrelevant to the issues that arise in the action and which are inadmissible as evidence. "Scandalous" includes allegations that

cast a cruelly derogatory light on a party or other person. *See In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000), *and see Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (allegations in a pleading alleging that a lawyer exhibited a "racist attitude" without any factual basis or evidence were struck as "scandalous and unrelated to any issues in the case").

The allegations against D.M.—that she engaged in cyberattacks, impersonation, fraud, and harassment, for example—are likewise entirely unsupported by evidence and lack any good faith basis. The allegations are immaterial and impertinent to Plaintiff's responses to the Court's Show Cause Orders.  The unfounded allegations and identification of D.M. in Rec. Doc. 73, 73-1, 80-1 and 82 serve no legitimate purpose in this litigation and appear designed solely to harm D.M.'s reputation. Accordingly, D.M. requests that the Court redact or strike all references to D.M.'s legal name and the associated allegations from Rec. Doc. 73, 73-1, 80-1 and 82.

## CONCLUSION

For the foregoing reasons, D.M. respectfully requests that this Court grant her re-urged Motion to Enforce Compromise Agreement. Plaintiff's breach of this agreement warrants enforcement by this Court, including the redaction of D.M.'s name from the public record and an award of attorney's fees and costs incurred in bringing this motion. Additionally, D.M. asks that the Court grant her Motion to Redact or Strike pursuant to Federal Rule of Civil Procedure 12(f). Alternatively, should the Court find it necessary to receive additional evidence and testimony in this matter, D.M. respectfully requests that the Court set this motion for an evidentiary hearing.

Respectfully submitted,

*/s/ Jacob K. Weixler*
Jacob K. Weixler, 36076
Weixler Law LLC
1239 Baronne St., Suite D
New Orleans, LA 70113
Phone: (504) 408-2180
Fax:      (504) 814-1728
jkw@weixlerlaw.com

*Counsel for D.M.*