## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CATHERINE BROWN**                         **CIVIL ACTION**

**VERSUS**                                  **NO: 21-1844**

**MINYANGO TOKPAH, ET AL.**                 **SECTION: "H"**

## ORDER AND REASONS

Before the Court is non-party D.M.'s Motion to Enforce Compromise Agreement (Rec. Doc. 94). For the reasons set forth herein, the Motion is **GRANTED IN PART.** Plaintiff must file redacted Record Documents 73, 73-1, 80-1, and 82 removing D.M.'s legal name by **THURSDAY, SEPTEMBER 4, 2025**, as described herein.

## BACKGROUND

The procedural history and facts of this case are perplexing. Plaintiff filed this suit against various Defendants alleging that each had engaged to some degree in stalking, harassing, threatening, attacking, intimidating, or defaming her through online activity.[1] Generally, Plaintiff claims that Defendants are individuals using online platforms like YouTube to engage in "cyber and online harassment" that began around October 1, 2020 and has

---

[1] Rec. Doc. 7 at 1.

1

persisted since.[2] In the initial Complaint filed on October 8, 2021, Plaintiff named seven parties as defendants to her action and eleven others as "[a]liased-named defendants."[3] An online poster known as "Scarlit" was one of the eleven "aliased-named defendants."[4] Plaintiff's Complaint alleged that "Scarlit . . . engaged in a series of harassing and defamatory online postings and broadcasts which are illegal and tortuous [sic]." [5]

On October 13, 2021, five days after filing the original Complaint, Plaintiff filed an Amended Complaint removing "Scarlit" and several other Defendants and instead named "Scarlit" as one of several "non-defendant, aliased actors."[6] On April 25, 2022, Plaintiff filed a Second Supplemental and Amended Complaint, again naming "Scarlit" among the "non-defendant actors . . . aligned with the named defendants."[7] No summons was ever issued to "Scarlit."[8] The Second Supplemental and Amended Complaint did not name or otherwise mention "D.M."

### 1. January 24, 2024 Order to Show Cause

On November 4, 2022, this Court granted certain Defendants' Motion to Dismiss for lack of jurisdiction, holding that Plaintiff had not made a "prima facie showing that personal jurisdiction" extended to those Defendants.[9] After

---

[2] *Id.* at 10.

[3] Rec. Doc. 1 at 4–7.

[4] Rec. Doc. 1 at 7.

[5] *Id.* at 33.

[6] Rec. Doc. 7 at 7–8.

[7] Rec. Doc. 47 at 14.

[8] Rec. Doc. 79-1 at 2.

[9] Rec. Doc. 68.

Plaintiff failed to take steps to prosecute this litigation, on January 24, 2024, this Court issued a Notice to Show Cause ("First Notice to Show Cause"), which provided that "Plaintiff's counsel shall have up to and including February 14, 2024, to further prosecute their claim(s), obtain responsive pleadings and/or file returns of service as to the above-named defendants."[10] On February 14, 2024, Plaintiff filed a "Reply to the Notice to Show Cause" ("Reply to First Notice to Show Cause") in which Plaintiff's counsel contended, inter alia, that his illness caused delays in this litigation.[11] Counsel also identified several individuals/entities that Plaintiff "no longer wished to pursue in litigation," including "Scarlit," who was "otherwise identified as [D.M.]"—notwithstanding that "Scarlit" was no longer a named defendant. [12] In an email attached to the "Reply," counsel stated that D.M. is "[k]nown for having multiple accounts (male and female actors)," that D.M. "created accounts pretending that these accounts were [Plaintiff] (who was allegedly harassing other, including [D.M.] online)," and that D.M. "has since ceased and desisted her participation in cyber-attack against [Plaintiff]."[13] In both the Reply and the attached email, counsel for Plaintiff identified D.M. by her legal name.[14]

---

[10] Rec. Doc. 69.

[11] Rec. Doc. 73.

[12] *Id.* at 8.

[13] Rec. Doc. 73-1 at 2.

[14] Rec. Docs. 73; 73-1.

### 2. First Motion to Enforce and Motion to Intervene

On August 20, 2024, Counsel for D.M. filed a Motion to Enforce Compromise Agreement ("First Motion to Enforce").[15] According to D.M., she "discovered through an internet search" that [Plaintiff] and her counsel had filed the Reply to First Notice to Show Cause "identifying D.M. by her legal name and accusing her of online harassment, creating false identities, impersonating others, and engaging in a cyber-attack despite the fact that she is not a party to this litigation," after which she immediately secured counsel.[16]

In her Motion, D.M. contended that Plaintiff's allegations against D.M. were in "bad faith" and "defamatory."[17] She stated that "Scarlit" had "not been a defendant in this matter since October 2021, so there was no need to 'remove' Scarlit as a defendant," and that even if "[Plaintiff] and/or her counsel felt the need to inform the Court that [Plaintiff] has no desire to pursue claims against 'Scarlit,' a former defendant alias, there was no need to publicly identify D.M. for the first time as the aliases' suspected user and to accuse her of a multitude of bad acts."[18]

According to D.M., after her counsel reached out to counsel for Plaintiff regarding the above, counsel for Plaintiff agreed to withdraw and/or redact the First Reply identifying D.M. by her legal name. In exchange, "D.M. offered that she would agree to forego filing a motion for sanctions or other motions against [Plaintiff], which might require [Plaintiff] to pay D.M.'s attorney's fees or other

---

[15] Rec. Doc. 79.

[16] Rec. Doc. 79-1 at 5.

[17] Rec. Doc. 79-1 at 5.

[18] *Id.*

4

penalties for her bad faith conduct."[19] D.M. therefore requested in her First Motion to Enforce that the Court enforce the purported agreement and "withdraw and/or redact" the Reply to First Notice to Show Cause containing her legal name.[20]

Specifically, D.M. alleged that a compromise was reached based on the following. On March 12, 2024, counsel for D.M sent the following correspondence: "I am writing to demand that you withdraw this filing within seven days of this letter or by March 19, 2024. The passage above is false, defamatory, and lacks a good faith basis as required by Rule 11 of the Federal Rules of Civil Procedure."[21] The email further stated that "[i]f [Plaintiff] refuses to withdraw the document containing the false information above, [D.M.] will be forced to file a Motion to Strike and a Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure in the above-captioned matter."[22]

On April 17, 2024, counsel for D.M. sent an email allegedly attaching a draft motion for Plaintiff's counsel's review.[23] That email stated that "I am writing today on behalf of my client, D M to provide you with instructions for removing and/or striking the documents (Rec. Doc. 73 and Rec. Doc. 73-1) that

---

[19] Rec. Doc. 79-1 at 6.

[20] *Id.*

[21] Rec. Doc. 79-2.

[22] *Id.* D.M. alleged that Plaintiff's "counsel contacted undersigned counsel and indicated that [Plaintiff] agreed to the proposed resolution but asked that undersigned counsel prepare the motion for leave to remove and replace filings," and that counsel for D.M. "agreed to do so." Rec. Doc. 79-1 at 6.

[23] Rec. Doc. 79-5 at 1.

contain personally identifying information for my client, as well as a draft motion for filing."[24] The email further stated that "[t]he attached draft motion is ready for your submission."[25] The draft motion, however, was not attached to the First Motion to Enforce. In the email, counsel for D.M. also requested that counsel for Plaintiff "add your signature block and file the motion and proposed order," as well as "append to the motion an exhibit ("Proposed Pleading") with a replacement version of the previously filed Petitioner's Reply to Notice to Show Cause Order (Rec. Doc. 73) and its accompanying exhibit (Rec. Doc. 73-1) that removes or redacts my client's name."[26] Finally, counsel for D.M. also stated that "for your convenience, I have underlined below the references that at minimum need to be redacted or omitted from the replacement filing," and provided excerpts that needed to be redacted.[27]

On April 30, 2024, counsel for Plaintiff responded that "I am working to complete the filing involving your client, which my client agrees to."[28] On May 2, 2024, counsel for Plaintiff sent an email stating that "after consideration, my [c]lient, Catherine Brown, has instructed me to NOT file any motions to voluntarily remove [D.M.] from this litigation, given [D.M.]'s participation in ridiculing and harassing" Plaintiff.[29] Confusingly, counsel for Plaintiff requested that D.M. "respond to this lawsuit," but also stated that "[g]iven our

---

[24] Rec. Doc. 79-3.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] Rec. Doc. 79-5 at 1.

previous discussions regarding the possibility of the Plaintiff agreeing on removing or dismissing [D.M.] from the litigation voluntarily, I will take no adverse actions against [D.M.] for the next thirty (30) days, after which time I will be obliged to seek an entry of default if service has been properly made against [D.M.] here."[30]

In her Opposition to the First Motion to Enforce, Plaintiff contended that she did not object to the removal or dismissal of Defendant D.M. yet also stated that "Plaintiff remains steadfast in her position that Defendant 'DM' has made numerous statements and internet postings damaging and ridiculing and threatening Plaintiff in the past—prior to the inclusion of Defendant/mover 'DM'. . . ."[31] Plaintiff also attached to the Opposition as Exhibit 1 an unredacted email again identifying D.M. by her legal name.[32]

On February 10, 2025, this Court denied D.M.'s First Motion to Enforce, reasoning that, "although Plaintiff's statements suggest otherwise, D.M. is not a party to this suit."[33] This Court therefore stated that "D.M. must either file a motion to intervene pursuant to Federal Rule of Civil Procedure 24(c) or file a separate suit."[34] On April 23, 2025, counsel for D.M. filed a Motion to Intervene, which was unopposed.[35] On May 30, 2025, the Court granted the

---

[30] *Id.*

[31] Rec. Doc. 80 at 2.

[32] Rec. Doc. 80-2.

[33] Rec. Doc. 83 at 7.

[34] *Id.*

[35] Rec. Doc. 88.

Motion to Intervene allowing D.M. to file a "motion to enforce compromise agreement and/or motion to strike and/or redact from the record."[36]

### 3. January 28, 2025 and April 30, 2025 Orders to Show Cause

On January 8, 2025, after Plaintiff failed to (1) serve certain Defendants and/or (2) file any motions dismissing certain Defendants or requesting any extensions, this Court issued a second Notice to Show Cause ("Second Notice to Show Cause") ordering that "on or before January 29, 2025, plaintiff's counsel take steps to further prosecute these claims or show good cause in writing, as to why this matter has not been properly joined."[37] On January 29, 2025, Plaintiff filed a Reply to Show Cause ("Reply to Second Notice to Show Cause"), reiterating that Plaintiff's counsel's illness caused delays in this litigation.[38] Plaintiff also stated that she "wishes to have 'removed' from this lawsuit" certain individuals including "Scarlit," but also, for the fourth time, identified D.M. by her legal name.[39]

On April 30, 2025, this Court issued an Order to Show Cause ordering, for the third time, that Plaintiff's counsel to "take steps to further prosecute these claims or provide an update to the Court of his current health status" on or before May 21, 2025, and dismissing certain Defendants without prejudice.[40]

---

[36] Rec. Doc. 93 at 1.

[37] Rec. Doc. 81 at 1.

[38] Rec. Doc. 82.

[39] *Id.* at 9.

[40] Rec. Doc. 89.

On May 22, 2025, Plaintiff filed a third Reply reiterating the reasons for the delay in litigation.[41] Plaintiff did not mention D.M. in that Reply.

### 4. Instant Motion to Enforce/Redact

On June 16, 2025, D.M. filed the instant Motion to Enforce Compromise and Motion to Redact or Strike, wherein D.M. "re-urges" the arguments made in her first Motion.[42] D.M. contends that she "has intervened in this matter for the limited purpose of protecting her personal and professional reputation from false allegations made by Plaintiff . . . in public court filings."[43] According to D.M., in response to D.M.'s first Motion to Enforce, Plaintiff "acknowledged that she 'did in fact' reach an 'earlier compromise . . . between counsel,' but failed to address whether that compromise should be enforced."[44] D.M. further contends that despite Plaintiff's "acknowledgment that she reached an agreement in April 2024 to remove D.M.'s name from her filings," Plaintiff has "continued to file documents on the public docket identifying D.M."[45] As such, in addition to the Reply to First Notice of Show Cause mentioned in her First Motion to Enforce, D.M. requests that the Court strike and/or redact (1) the email attached as Exhibit 1 to Plaintiff's Opposition to the First Motion to Enforce and (2) Plaintiff's Reply to Second Notice to Show Cause. Plaintiff has not filed an Opposition.

---

[41] Rec. Doc. 91.

[42] Rec. Doc. 94-1.

[43] Rec. Doc. 94-1 at 1.

[44] *Id.* at 2.

[45] *Id.*

## LEGAL STANDARD

Largely relying on exhibits attached to her First Motion to Enforce, D.M. argues in the instant Motion that a compromise between her counsel and Plaintiff's counsel was reached and requests that the Court, through enforcement of that compromise, remove D.M.'s legal name in multiple filings.[46] Based on the emails attached to the first Motion, however, D.M. apparently maintains that counsel for Plaintiff agreed to file a "proposed" motion redacting only the First Notice to Show Cause.[47] And it is unclear what precise relief that motion would seek because D.M. has not filed it into the record.

Regardless, D.M. avers that removal of her legal name is appropriate "either in enforcing the compromise agreement or otherwise as a separate form of relief."[48] As such, the Court will analyze D.M.'s Motion in accordance with her requested relief—that is, the redaction of of her legal name from certain documents previously filed in the record. [49]

---

[46] Rec. Doc. 94 at 2.

[47] Rec. Doc. 94-1 at 7.

[48] Rec. Doc. 94-1 at 9.

[49] In the instant Motion, D.M. also states that counsel for Plaintiff agreed to "withdraw" filings; she later invokes Federal Rule of Civil Procedure 12(f) and requests that the filings and/or certain excerpts of those filings be "stricken." Rec. Doc. 94-1 at 7. Of course, the decision to strike or redact material already filed in the record rests with the Court. Moreover, assuming, arguendo, that Rule 12(f) applies to filings other than "pleadings," even if the filings are considered "stricken," they would remain visible in the record unless sealed or redacted. *See* L.R. 5.6 "Procedure for Filing Documents Under Seal"; *see also* Mendoza v. Doyle Int'l La, LLC, No. 17-437, 2019 WL 5391389, at *3 n.30. The same is true if the filings are considered "withdrawn" and/or "filed in error."

As the Fifth Circuit has explained, "[t]he public has a common law right of access to judicial records."[50] "'Judicial records are public records.'"[51] "Public access serves important interests in transparency and the 'trustworthiness of the judicial process.'"[52] "Sealing records is therefore 'heavily disfavored.'"[53]

This right of access, however, is not absolute; this Court may, under its "supervisory power over its own records and files," order that documents be sealed or redacted, when appropriate.[54] In making the determination as to whether sealing is appropriate, "the court 'must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure.'"[55] Critically, "[b]ecause of the court's duty to protect the public's right of access, the district court must balance these interests even if the parties agree to seal records."[56] Moreover, the sealing, redaction, and pseudonymity analyses "require[] the court to balance the private and public interests—even if the parties agree to stay anonymous."[57]

---

[50] Sealed Appellant v. Sealed Appellee, No. 22-50707, 2024 WL 980494, at *2 (5th Cir. Mar. 7, 2024) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597–98 (1978)); see also June Med. Servs. L.L.C. v. Phillips, 22 F.4th 512, 521 (5th Cir. 2022) (noting that "at the adjudicative stage, when materials enter the court record, the standard for shielding records from public view is far more arduous" thana filing a protective order at the discovery stage).

[51] Sealed Appellant, 2024 WL 980494, at *2 (quoting Binh Hoa Le v. Exeter Fin. Corp., 990 F.3d 410, 416 (5th Cir. 2021)).

[52] Id. (quoting June Med. Servs., 22 F.4th at 512).

[53] Id. (quoting June Med. Servs., 22 F.4th at 512).

[54] Id.

[55] Id. (quoting Binh Hoa Le, 990 F.3d at 419).

[56] Id. (citing BP Expl. & Prod., 920 F.3d 209, 211–12 (5th Cir. 2019)).

[57] See id. at *3 (emphasis added).

## LAW AND ANALYSIS

Here, the Court finds that the redaction of D.M.'s legal name is appropriate. "Courts have denied access to judicial records when those files 'might have become a vehicle for improper purposes,' such as when records are 'used to gratify private spite or promote public scandal.'"[58] Here, D.M. is not a party to the suit and she was not otherwise mentioned in the operative Complaints. And Plaintiff has stated her intent to "remove" the entity "Scarlit" (who was never served) from the suit. Notably, redaction, rather than sealing a document writ large, "is often, but not always, 'practicable and appropriate as the least restrictive means of safeguarding sensitive information.'"[59] The same is true here.

Finally, in addition to her request to "redact or strike all references to D.M.'s legal name," D.M. also requests that the Court remove "all associated allegations."[60] The only "associated allegations" referenced by D.M. appear to be those found in Exhibit 1 attached to Plaintiff's Reply to First Notice to Show Cause.[61] The Court finds that D.M. has not shown that the disfavored remedy of redacting such allegations is warranted. Rather, the lesser remedy of redacting D.M.'s legal name is sufficient.[62]

---

[58] *Sealed Appellant*, 2024 WL 980494, at *2 (quoting *Nixon*, 435 U.S. at 598).

[59] *Id.* (quoting United States v. Ahsani, 76 F.4th 441, 453 (5th Cir. 2023)).

[60] Rec. Doc. 94-1 at 10.

[61] Rec. Doc. 73–1. D.M. does not request that any allegations in the Amended Complaint be removed.

[62] *See Mendoza*, 2019 WL 5391389, at *3.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Enforce Compromise Agreement is **GRANTED IN PART.**

**IT IS ORDERED** that Plaintiff file redacted Record Documents 73, 73-1, 80-1, and 82 removing all references to D.M.'s legal name by **Thursday, September 4, 2025.**


New Orleans, Louisiana this 28th day of August, 2025.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

13